IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ALLIED WORLD SPECIALTY INSURANCE COMPANY f/k/a DARWIN NATIONAL ASSURANCE COMPANY, a Delaware Corporation,<br><br>        Plaintiff,<br><br>SIU PHYSICIANS & SURGEONS, INC., an Illinois Corporation,<br><br>        Defendant. | Case No.:<br><br>*Jury Trial Demanded* |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company ("Allied World"), by and through its attorneys, BatesCarey LLP, and for its Complaint for Declaratory Judgment, states as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage dispute. Allied World issued four consecutive liability insurance policies to Defendant, SIU Physicians & Surgeons, Inc. ("SIU P&S"). Each policy is a "claims made and reported" policy, which means that any **Claim**[1] reported to Allied World for coverage under one of the policies must be: (a) first made during the **Policy Period** of that policy, and (b) reported to Allied World as soon as practicable, but in no event later than 90 days after the expiration of that policy. Otherwise, SIU P&S is not entitled to coverage for the **Claim** under that policy.

---

[1] Terms in bold are defined in the Allied World policies.

2. During the **Policy Period** of the fourth Allied World policy, SIU P&S provided first notice of a **Claim** to Allied World for coverage. The **Claim** arises out of a dispute between SIU P&S and its former employee Dr. Sajida Ahad. The **Claim**, however, was not first made and reported within 90 days of the expiration of any of the four Allied World policies. Therefore, Allied World owes no coverage for the **Claim** under any of the four Allied World policies.

3. Other terms and conditions of the Allied World policies also bar or limit coverage for the **Claim**.

## PARTIES

4. Allied World is a corporation organized under the laws of Delaware with its principal place of business located in New York.

5. SIU P&S is a corporation organized under the laws of Illinois with its principal place of business located in Springfield, Illinois.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202, as Allied World seeks a declaration of the parties' rights and obligations under the policies issued by Allied World. Jurisdiction is also conferred by 28 U.S.C. § 1332(a), as complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), in that SIU P&S is a resident within this District, and a substantial part of the events or omissions giving rise to this action occurred within this District.

**ALLIED WORLD POLICIES**

8. Allied World issued four consecutive Healthcare Organizations Management Liability Package Policies, each containing an Employment Practices Liability Coverage Section (the "EPL Coverage Section"), to SIU P&S for the following **Policy Periods**: November 4, 2013 to November 4, 2014 (the "2013 Policy"); November 4, 2014 to November 1, 2015 (the "2014 Policy"); November 1, 2015 to November 1, 2016 (the "2015 Policy"); and November 1, 2016 to November 1, 2017 (the "2016 Policy") (each a "Policy," and, collectively, the "Policies"). Each Policy contains an EPL Coverage Section Limit of Liability of $2 million, subject to any applicable retention. True and accurate copies of the 2013 Policy, the 2014 Policy, the 2015 Policy, and the 2016 Policy are attached hereto as Exhibit A, B, C, and D, respectively.

9. As relevant here, the Policies contain identical terms, conditions, and exclusions, except for the **Policy Period**.

10. The Insuring Agreement set forth in Section I.A. in the EPL Coverage Section of the Policies states as follows:

> The **Insurer** shall pay on behalf of any **Insured** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions and Section IV. of this Coverage Section.

11. Section II.B. of the EPL Coverage Section of the Policies defines **Claim** to mean any:

> (1) written demand for monetary, non-monetary or injunctive relief made against an **Insured**;
>
> (2) judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief,

3

    commenced against an **Insured**, including any appeal therefrom, which is commended by:
      (a) service of a complaint or similar pleading;
      (b) return of an indictment or similar document (in the case of a criminal proceeding); or
      (c) receipt or filing of a notice of charges;

 (3) arbitration or mediation proceeding commenced against an **Insured** by service of a demand for arbitration or mediation;

 (4) notification of an investigation of an **Insured** by the Equal Employment Opportunity Commission ("EEOC") or similar governmental agency commenced by the filing of a notice of charges, formal investigative order or similar document;

 (5) audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"), but only if commenced by the receipt of a notice of violation, order to show cause, or a written demand for monetary or non-monetary or injunctive relief; or

 (6) written request to toll or waive the applicable statute of limitations, or to waive any contractual time-bar, relating to a potential **Claim** against an **Insured** for a **Wrongful Act**.

Section II.B. further provides that "[a] **Claim** shall be deemed first made when any **Insured** first receives notice of the **Claim**."

 12. Section II.F. of the Policies' General Terms and Conditions defines **Related Claims** as "all **Claims** for **Wrongful Acts** based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events."

 13. Section V.D. of the Policies' General Terms and Conditions provides that "[a]ll **Related Claims** shall be deemed to be a single **Claim** made on the date on which the earliest **Claim** within such **Related Claims** was first made, or when the earliest **Claim** within such **Related Claims** is treated as having been made in accordance with Section V.C. above, whichever is earlier."

14. Section IV.A. of the EPL Coverage Section of the Policies provides, in relevant part, that:

> The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer** at either the physical or email address indicated in Item 7. of the Declarations, of a **Claim** made against an **Insured** as soon as practicable after the **Company's** General Counsel, Director of Human Resources or Risk Manager, or any individual with functionally equivalent responsibilities, becomes aware of the **Claim**.

15. Section V.B. of the General Terms and Conditions of the Policies provides, in relevant part, that "in no event shall notice of any **Claim** be provided to the **Insurer** later than ninety (90) days after the end of the **Policy Period** or Discovery Period if applicable."

## THE AHAD CLAIM

### *The EEOC Charge*

16. Dr. Sajida Ahad is a former Assistant Professor of Surgery/Bariatric Surgeon at the Southern Illinois University School of Medicine, and a female citizen of Pakistan of South Asian national origin.

17. On or about July 28, 2014, Dr. Ahad filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC Charge"). The EEOC Charge named the following as Respondents: (1) SIU P&S; (2) Southern Illinois School of Medicine ("SIU SM"); (3) Southern Illinois University ("SIU"); and (4) SIU Healthcare, Inc. ("SIU HC") (collectively, the "Respondents"). A true and correct copy of the EEOC Charge is attached hereto as Exhibit E.

18. Upon information and belief, Defendant SIU P&S first received notice of the EEOC Charge during the **Policy Period** of the 2013 Policy, i.e. between November 4, 2013 and November 4, 2014.

19.     In the EEOC Charge, Dr. Ahad alleged discrimination based on sex and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Equal Pay Act (the "EPA").  Per the Charge, Dr. Ahad had written employment contracts referencing obligations of SIU P&S and SIU SM, requiring that she be paid total estimated annualized earnings of $250,000; however, she claims the Respondents underpaid her far below the $250,000 annual required wage, as evidenced by her Form W-2s and payroll records.  Dr. Ahad asserted this conduct violated the visa regulations in the Code of Federal Regulations.  Dr. Ahad further asserted that the named Respondents are joint employers, and that SIU, SIU P&S, SIU SM, and SIU HC – in their own capacities and as joint employers – directed, knew of, or should have known of the discriminatory conduct and failed to take prompt corrective measures.

20.     Dr. Ahad further asserted in the EEOC Charge that two other female, foreign-born physicians also alleged discriminatory practices by the Respondents in complaints they made to the Accreditation Council for Graduate Medical Education.  Dr. Ahad alleged that the Respondents have: (a) engaged in a systematic pattern and practice of discriminating, based on gender, against Dr. Ahad and other female employees; (b) used and continued to use an employment policy and practice of providing wages and benefits to female employees, including but not limited to Dr. Ahad and other females in similar physician and/or medical-professor positions, that are less than wages and benefits paid and provided to male workers for substantially similar and equal work; and (c) used and continued to use an employment policy and practice of creating a hostile work environment and providing adverse terms and conditions of employment to female employees, including but not limited to Dr. Ahad and other females in similar physician and/or medical-professor positions, that are worse than those provided to male workers in comparable positions.

6

21. Dr. Ahad also claimed in the EEOC Charge that the Respondents engaged in a systemic pattern and practice of discriminating by underpaying wages and benefits and providing adverse terms and conditions of employment with respect to Dr. Ahad and other employees of South Asian national origin – or otherwise not of American national origin – and by preferentially providing better wages, benefits and work conditions to American workers or other non-South Asian workers, which discrimination is intentional. Dr. Ahad's Charge cited numerous male comparators whom she claims were paid more. She also claimed other physicians, surgeons and/or academic staff in medical areas who are male have worked for Respondents in substantially similar positions performing equal work as Dr. Ahad, but were paid more wages and/or benefits, which was discriminatory and intentional.

22. Dr. Ahad further claimed the Respondents failed to provide pregnancy leave benefits, maternity leave benefits, and other benefits to her in the same manner as comparable benefits (including pregnancy, maternity and paternity leave benefits) were provided to American employees, non-South Asian employees and/or male employees, which was discriminatory and intentional. Dr. Ahad alleged the Respondents treated her adversely, including but not limited to creating a hostile work environment, because she took two months of pregnancy leave. When Dr. Ahad complained to Human Resources about adverse conduct related to her leave, she allegedly was told the conduct occurred because Human Resources had not conducted necessary training with the various chairs of the division as to what they should say and do with regard to pregnant employees.

23. Dr. Ahad claimed that during their interactions with her and with other female and/or South Asian or non-American employees, the Respondents engaged in unlawful and discriminatory practices in violation of Title VII based on gender, national origin and descent,

7

the effect of which was to deprive Dr. Ahad and others in her protected classes of equal employment opportunities. She further alleged the Respondents violated the EPA, which requires that men and women in the same workplace be given equal pay for substantially equal jobs and work. Dr. Ahad asserted the Respondents' policies, procedures and actions had a disparate impact on females and/or South Asian employees who were treated adversely as a result of the Respondents' activities.

*The Lawsuit*

24. On October 27, 2015, Dr. Ahad filed a Class Action and Collective Action Complaint in the United States District Court for the Central District of Illinois, Case No. 15-cv-3308, captioned *Sajida Ahad, M.D. on behalf of herself and all others similarly situated v. Southern Illinois School of Medicine, Southern Illinois University, Board of Trustees of Southern Illinois University, SIU Healthcare, Inc., and SIU Physicians & Surgeons, Inc.* (the "Lawsuit"). In the Lawsuit, Dr. Ahad alleges that she has received unequal pay for equal work as compared with her male colleagues for the approximately six years she worked for SIU SM and SIU P&S. Dr. Ahad claims that after she resigned, her replacement – a male who recently completed his residency – was paid a starting salary $75,000 higher than Dr. Ahad's final salary. Dr. Ahad also believes that, unlike her, her replacement was paid a $2,500 signing bonus and was guaranteed annual income in excess of $300,000. Dr. Ahad's Lawsuit indicates she is bringing suit on her behalf and on behalf of other similarly-situated individuals. She asserts individual and collective action claims under the EPA, Title VII, the Illinois Equal Pay Act of 2003, and the Illinois Civil Rights Act of 2003. Paragraph 15 of the amended complaint in the Lawsuit expressly references the prior filing of Dr. Ahad's July 2014 EEOC Charge – inclusive of the Title VII discrimination claims being alleged in her Lawsuit – and her receipt of a right-to-sue notice from the EEOC. A

true and correct copy of the October 27, 2015 Class Action and Collective Action Complaint is attached hereto as Exhibit F.  A true and correct copy of the October 12, 2016 Amended Class Action and Collective Action Complaint is attached hereto as Exhibit G.

25. Upon information and belief, Defendant SIU P&S first received notice of the Lawsuit during the **Policy Period** of the 2015 Policy, i.e. between November 1, 2015 and November 1, 2016.

26. The EEOC Charge and the Lawsuit constitute **Related Claims** because they are both **Claims** for **Wrongful Acts** based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.  Therefore, the EEOC Charge and the Lawsuit constitute a single **Claim** (the "Ahad **Claim**") first made on the date on which the earliest **Claim** within such **Related Claims** was first made.

## INSURANCE COVERAGE DISPUTE

27. SIU P&S seeks insurance coverage from Allied World under one or more of the Policies in connection with the Ahad **Claim**.

28. Allied World disputes that coverage exists for the Ahad **Claim** under any of the Policies.

29. An actual, present, and bona fide controversy exists between Allied World and SIU P&S with respect to whether there is insurance coverage for the Ahad **Claim** under any of the Policies.

30. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policies.

**COUNT I – DECLARATORY JUDGMENT**
**(2013 Policy, 2014 Policy, 2015 Policy – Untimely Notice)**

31. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 30 as though set forth fully herein.

32. The 2013 Policy, the 2014 Policy, and the 2015 Policy each require the **Insureds** to report any **Claim** as soon as practicable, but in no event later than 90 days after the expiration of their respective **Policy Periods**.

33. SIU P&S first reported the Ahad **Claim** to Allied World on or after April 24, 2017.

34. SUI P&S did not report the Ahad **Claim** prior to April 24, 2017.

35. There is no coverage for the Ahad **Claim** under the 2013 Policy, the 2014 Policy, or the 2015 Policy because SUI P&S reported the Ahad **Claim** more than 90 days after the expiration of the 2013 Policy, the 2014 Policy, and the 2015 Policy.

**COUNT II – DECLARATORY JUDGMENT**
**(2014 Policy, 2015 Policy, and 2016 Policy –**
**No Claim First Made During Policy Period)**

36. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 35 as though set forth fully herein.

37. The Ahad **Claim** is deemed first made during the 2013 **Policy Period** because SIU P&S first received notice of the EEOC Charge during the 2013 **Policy Period**.

38. There is no coverage for the Ahad **Claim** under the 2014 Policy, the 2015 Policy, or the 2016 Policy because the Ahad **Claim** is not a **Claim** first made during those **Policy Periods**.

## COUNT III – DECLARATORY JUDGMENT
### (All Policies – Definition of "Insured")

39. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 38 as though set forth fully herein.

40. Pursuant to the Policies' EPL Coverage Section Insuring Agreements, coverage is only available for **Loss** on behalf of an **Insured** arising from a **Claim** against such **Insured**, subject to the terms and conditions of the Policies.

41. Several of the respondents and/or defendants in the Ahad **Claim** are not **Insureds** within the meaning of the Policies, including but not limited to Southern Illinois University, Southern Illinois University School of Medicine, and the Board of Trustees of Southern Illinois University.

42. Coverage is not available to any of these entities, or any other person or entity that does not fall within the Policies' definition of an **Insured**.

## COUNT IV – DECLARATORY JUDGMENT
### (All Policies – Definition of "Loss")

43. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 42 as though set forth fully herein.

44. Pursuant to the Policies' EPL Coverage Section Insuring Agreements, coverage is only available for **Loss** arising from a **Claim**.

45. **Loss** is defined under Section II.P. of the EPL Coverage Sections, as amended by the Illinois State Amendatory Endorsement, to mean in relevant part:

> (1) damages, settlements, or judgments . . .
> (3) legal costs or attorneys fees awarded by a court in favor of the claimant…
> (9) **Defense Costs**.
>
> "**Loss**" does not include:

      (a)    amounts which an **Insured** is not legally obligated to pay;
      (b)    taxes; other than as specifically included above in this Definition, and only if insurable under law;
      (c)    fines or penalties, other than as specifically included above in this definition, and only if insurable under law;
      (d)    amounts deemed uninsurable under law;
      (e)    costs or liability incurred by any **Insured** to modify any building or property to make it more accessible or accommodating to any disabled person, or in connection with any educational, sensitivity or other corporate program, policy or seminar; or
      (f)    amounts paid or incurred by the **Insureds** to comply with a judgment or settlement for non-monetary or injunctive relief.

However, this Coverage Section shall provide coverage for **Defense Costs** incurred in a **Claim** seeking amounts specified in paragraphs (a) through (f) above, subject to all other terms, conditions and exclusions of this Policy.

46.     The Illinois Amendatory Endorsement to each of the Policies further provides in relevant part:

[N]o coverage shall be available for punitive, exemplary or multiplied damages under this Policy, except as described below.

Provided, however, that it is understood and agreed under the laws of the State of Illinois, punitive damages assessed against an **Insured** in an otherwise covered **Claim**, may be insurable if such damages are based on vicarious liability for the wrongful conduct of another, also referred to as "vicariously assessed" punitive damages. It is understood and agreed that directly-assessed punitive damages are not insurable under the laws of the State of Illinois.

Only to the extent that the laws under which this policy is construed allow for the insurability of such punitive damages, shall this Policy be deemed amended to provide such coverage, subject to the Sublimit of Liability set forth in Item 4.F. of the Declarations.

47.     Coverage is not available for the Ahad **Claim** to the extent any **Insured** incurs any amount in connection with the Ahad **Claim** that falls outside the definition of **Loss** or the Illinois Amendatory Endorsement.

### COUNT V – DECLARATORY JUDGMENT
### (All Policies – FLSA Violation Sublimit of Liability)

48. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 47 as though set forth fully herein.

49. Section II.V. of the EPL Coverage Sections of the Policies provides that coverage for **FLSA Violations** is limited to **Defense Costs** only, subject to the sublimit of liability set forth in Item 4.F. of the Declarations.

50. Coverage for the Ahad **Claim** is barred or limited to the extent the **FLSA Violation** sublimit of liability in Item 4.F. of the Declarations applies.

### COUNT VI – DECLARATORY JUDGMENT
### (All Policies – Exclusion III.A.)

51. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 50 as though set forth fully herein.

52. Exclusion III.A. of the Policies bars coverage for any **Loss** in connection with any **Claim**:

> alleging, arising out of, based upon or attributable to any deliberate criminal or deliberate fraudulent act or any willful violation of law by an **Insured** if a final judgment or adjudication establishes that such act or violation occurred.

53. Coverage for the Ahad **Claim** is barred to the extent that Exclusion III.A. applies.

### COUNT VII – DECLARATORY JUDGMENT
### (All Policies – Exclusion III.B.)

54. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 53 as though set forth fully herein.

55. Exclusion III.B. of the Policies bars coverage for **Loss** in connection with any **Claim**:

> Alleging, arising out of, based upon or attributable to any actual or alleged liability of any **Insured** under any express contract or agreement; provided however, that this Exclusion shall not apply: (1) to the extent such liability which would have attached in the absence of such express contract or agreement; or (2) to the payment of **Defense Costs** for the portion of such a **Claim** against an **Insured Person**; or (3) to the payment of **Defense Costs** in that portion of such a claim against an **Insured**, for an actual or alleged breach of an **Employment Contract**.

56. Coverage for the Ahad **Claim** is barred or limited to the extent Exclusion III.B. applies.

### COUNT VIII – DECLARATORY JUDGMENT
### (All Policies – Exclusion III.F.)

57. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 56 as though set forth fully herein.

58. Exclusion III.F. of the Policies bars coverage for **Loss** in connection with any **Claim**:

> alleging, arising out of, based upon, attributable to or in any way relating to any actual or alleged bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this Exclusion shall not apply to that portion of a **Claim** seeking damages for emotional distress or mental anguish resulting from a **Wrongful Act** of an **Insured**[.].

59. Coverage for the Ahad **Claim** is barred or limited to the extent Exclusion III.F. applies.

### COUNT IX – DECLARATORY JUDGMENT
### (All Policies – Public Policy)

60. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 59 as though set forth fully herein.

61. Coverage is not available for the Ahad **Claim** to the extent prohibited by public policy.

**COUNT X – DECLARATORY JUDGMENT**
**(All Policies – Known Loss/Loss in Progress Doctrine)**

62. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 61 as though set forth fully herein.

63. Coverage is not available for the Ahad **Claim** to the extent prohibited by the known loss and/or the "loss in progress" doctrine.

**COUNT XI – DECLARATORY JUDGMENT**
**(All Policies – Department of Labor Proceeding)**

64. Allied World incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 63 as though set forth fully herein.

65. Dr. Ahad filed a Complaint against SIU SM with the United States Department of Labor Wage and Hour Division, which alleged that SIU SM provided incorrect or false information on its Labor Condition Application, failed to pay nonimmigrant worker(s) the higher of the prevailing or actual wage, failed to pay nonimmigrant worker(s) for time off due to a decision by the employer or for time needed by the nonimmigrant worker(s) to acquire a license or permit, and failed to provide fringe benefits to nonimmigrant worker(s) equivalent to those provided to U.S. worker(s) (the "DOL Complaint").

66. SIU SM received notice of the DOL Complaint on or about June 13, 2014.

67. It is unclear whether or not coverage is sought for the DOL Complaint under the Policies.

68. To the extent coverage is sought for the DOL Complaint, coverage is unavailable because SIU SM, the only respondent named in the DOL Complaint, is not an **Insured** under the Policies.

69. Coverage is also barred or limited to the extent that the DOL Complaint constitutes part of the Ahad **Claim** for the reasons set forth in Counts I-X.

WHEREFORE, Plaintiff, Allied World Specialty Insurance company f/k/a Darwin National Assurance Company, prays that this Court enter a judgment in its favor and against SIU Physicians & Surgeons, Inc., awarding the following relief:

a. A declaration that Allied World has no duty to defend or indemnify SIU P&S or any other **Insured** in connection with the matters reported to Allied World under the Policies;

b. For costs of suit incurred herein; and

c. For such other and further relief at law or in equity that the Court deems just and proper.

## JURY DEMAND

Allied World demands a jury trial.

DATED:   June 9, 2017           Allied World Specialty Insurance Company f/k/a
                                Darwin National Assurance Company


                                By: /s/ Ommid C. Farashahi
                                    One of its Attorneys

Ommid C. Farashahi
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Ph.:   312-762-3100
Fax:   312-762-3200