IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ALLIED WORLD SPECIALTY INSURANCE COMPANY f/k/a DARWIN NATIONAL ASSURANCE COMPANY, a Delaware Corporation,  )<br>)<br>)<br>)<br>) | | |
| Plaintiff,  ) | Case No.: 17-CV-03139-SEM-TSH | |
| ) | | |
| SIU PHYSICIANS & SURGEONS, INC., an Illinois Corporation, SAJIDA AHAD, JAN RAKINIC, CHRISTINA VASSILEVA, and ERICA ROTONDO,  )<br>)<br>)<br>) | | |
| ) | | |
| Defendants.  ) | | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO PHYSICIAN DEFENDANTS' MOTION TO STAY

**I.   INTRODUCTION**

Plaintiff Allied World Specialty Insurance Co. ("Allied World") filed this action to seek a declaration that it owes no coverage for an underlying lawsuit filed against its insured, defendant SIU Physicians & Surgeons, Inc. ("SIU P&S"). Allied World named the plaintiffs in the underlying lawsuit, Drs. Sajida Ahad, Jan Rakinic, Christina Vassileva, and Erica Rotondo (collectively, the "Physician Defendants"), as defendants in this action solely to the extent Illinois law deems them to be necessary parties.

Now, at this advanced stage of the case, months after they were joined as parties and weeks after Allied World filed its summary judgment motion, three of the Physician Defendants have decided this action should not be allowed to proceed any further. They have asked the Court to stay this action under several discretionary abstention doctrines.

The Physician Defendants' motion should be denied and the Court should proceed to rule on Allied World's summary judgment motion, for three reasons. First, the *Peppers* doctrine does not require a stay because there are no overlapping issues between this case and the underlying lawsuit; the Court therefore can and should resolve the issues of contractual interpretation raised in this case without preempting any factual issues in the underlying lawsuit. Second, the *Wilton-Brillhart* abstention doctrine does not merit a stay because there is no parallel state court proceeding, and the other factors weigh against a stay. Third, the Court should not stay this case under *Landis* because a stay will not serve judicial economy, but would rather prejudice Allied World by deferring a resolution of the insurance coverage issues.

## II.   BACKGROUND

Allied World issued four consecutive liability insurance policies to SIU P&S. Each policy is a "claims made and reported" policy, such that any **Claim**[1] reported to Allied World for coverage under one of the policies must be (1) first made during the **Policy Period** of that policy, and (2) reported to Allied World no later than 90 days after the expiration of that policy. Otherwise, SIU P&S is not entitled to coverage for the **Claim** under that policy. The Policies define a **Claim** in pertinent part as a "judicial . . . proceeding, whether civil or criminal . . . commenced against an **Insured** . . . which is commenced by (a) service of a complaint or similar pleading . . ." *See* Dkt. #39-2, 39-3, 39-4, and 39-5 (EPL Coverage Section, § II.B.). The Allied World policies also contain a "Related Claims Provision," which provides that "[a]ll **Related Claims** shall be deemed to be a single **Claim** made on the date on which the earliest **Claim** within such **Related Claims** was first made ...." *See id*. (Gen. Terms and Conditions, §V.D.). The term **Related Claims** means "all **Claims** for **Wrongful Acts** based upon, arising out of, or

---

[1]   Terms in bold are defined in the Allied World Policies, Dkt. #39-2, 39-3, 39-4, and 39-5.

in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." *See id*. (Gen. Terms and Conditions, §II.F.)

One of the Physician Defendants—the lead plaintiff in the Ahad Lawsuit, Dr. Sajida Ahad—filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. Then, after she received a "right to sue" letter from the EEOC, she filed a class action and collective action employment discrimination lawsuit against SIU P&S. *See* Case No. 15-cv-3308, *Sajida Ahad, M.D. v. Southern Illinois School of Medicine*, *et al*. (C.D. Ill.) captioned (the "Ahad Lawsuit"). SIU P&S *concedes* that it did not timely report either the EEOC charge or the Ahad Lawsuit to Allied World under any Allied World policy. Therefore, the Allied World policies do not provide coverage (defense or indemnity) for the EEOC charge or the Ahad Lawsuit.

Nevertheless, SIU P&S contends that two "consent forms" filed by opt-in plaintiffs in the lawsuit (Dr. Jan Rakinic and Dr. Christina Vassileva) are new and distinct **Claims** that were timely reported under the last policy issued by Allied World to SIU P&S.[2] Allied World disagrees, and contends that under the terms of the Allied World policies, and the case law, the consent forms are part of a single **Claim**, which was not timely reported.

Allied World filed this action on June 9, 2017. Discovery closed on March 30, 2018. Allied World filed its summary judgment motion on April 30, 2018. Dkt. #40. After seeking and receiving two extensions, SIU P&S filed its response on June 25, 2018. Three of the four

---

[2]   SIU P&S concedes that there is no coverage for the consent form filed by Dr. Erica Rotondo.

Physician Defendants (Drs. Ahad, Rakinic, and Vassileva) filed their instant motion to stay on June 25, 2018.[3]

## III.   ARGUMENT

### A.   The *Peppers* Doctrine Does Not Require A Stay

The Physician Defendants argue that the Court should stay this action pursuant to *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187 (1976). The Physician Defendants are mistaken. *Peppers* only requires a stay if the coverage action would decide an "ultimate fact" at issue in the Ahad Lawsuit. *See id.* at 197. An "ultimate fact" is an issue "crucial to the insured's liability" which "would estop the plaintiff in the underlying case from pursuing one of [their] theories of recovery." *Fid. & Cas. Co. of N.Y. v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 307 (1st Dist. 1983). Physician Defendants, as the movants, bear the burden of proving that a *Peppers* stay is warranted. See *Marzouki v. Najar–Marzouki*, 2014 IL App (1st) 132841, ¶ 17 ("A party seeking a stay bears the burden of proving adequate justification for the stay . . . . The party seeking the stay must justify it by clear and convincing circumstances outweighing its potential harm to the opposing party.") (citations omitted). Here, however, the Physician Defendants identify no "ultimate facts," or any issues at all, that will be affected by this action. Therefore, the Physician Defendants have not met their burden of showing that this case should be stayed under *Peppers*.

Physician Defendants point to the pending Rule 23 certification motion and collective action de-certification motion in the Ahad Lawsuit, and assert in conclusory fashion that this case will somehow disrupt the rulings on those motions. But they fail to explain exactly how

---

[3]   Defendant Dr. Erica Rotondo apparently elected not to join the motion to stay, as she is not identified as one of the movants.

4

those issues, or any others in the Ahad Lawsuit, will be impacted by any decision the Court makes on Allied World's summary judgment motion.

That is because there will be no such impact. Allied World moved for summary judgment on two grounds. The first—which Physician Defendants' motion completely ignores—is that the Ahad Lawsuit, the Consent Forms included, is one "proceeding," and that the Consent Forms are not additional **Claims** that even need to be aggregated under the **Related Claims** provision. Since the Ahad Lawsuit was not first made and reported prior in any single Allied World **Policy Period**, coverage is barred for the entire "proceeding," the Consent Forms included. *See* Dkt. #40 at 11-12. This is a purely legal argument, in which Allied World asks the Court to do nothing more than look at the Policies and the structure of the Ahad Lawsuit to rule on this issue. The Court need not examine or pass judgment on any fact alleged or disputed by any party to the Ahad Lawsuit. The Court need only answer two questions: is the Ahad Lawsuit a "proceeding commenced by a complaint or similar pleading"? And are the Consent Forms part of that proceeding? The Court can easily answer both questions "yes," particularly because SIU P&S' response to Allied World's summary judgment motion wholly fails to address the relevant policy language or any of the case law from the Seventh Circuit and elsewhere that Allied World cited on this point. Dkt. #40 at 11. But regardless of how the Court may ultimately decide this question of policy interpretation, there can be no dispute that it is a "distinct question" from any employment discrimination or class/collective action certification issue that will be decided in the Ahad Lawsuit. That is sufficient to deny the request for a stay.

Allied World's second summary judgment argument is that, in the alternative, even if the Consent Forms and the Ahad Lawsuit are multiple **Claims** (which they are not) they should still be deemed one **Claim** under the Allied World Policies' **Related Claims** provision. Dkt. #40 at

5

12-16. The test for whether the Ahad Lawsuit and the Consent Forms are **Related Claims** is whether they are "based upon, aris[e] out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." *See* Dkt. #39-2, 39-3, 39-4, and 39-5 (Gen. Terms and Conditions, §II.F.).

The Physician Defendants argue that the Court cannot undertake this analysis until after it decides the pending Rule 23 class certification motion in the Ahad Lawsuit. Dkt. #47 at 7-8. But that is not true. The standard for determining class certification is different, and narrower, than the standard for determining whether claims are related under a claims made policy. *See Royal Indemn. Co. v. C.H. Robinson Worldwide, Inc.,* 2009 WL 2149637, at *5-6 (Minn. Ct. App. July 21, 2009) (rejecting argument that claims could not be "related" because they failed to satisfy "commonality" standard under Fed. R. Civ. P. 23(a)(2) because "the policy definition of 'Related Wrongful Employment Act' is broader than the commonality test"). As in *CH Robinson*, the **Related Claims** definition in the Policies is far broader than the standard for determining whether to certify a class.

Moreover, Physician Defendants are wrong to argue that evidence pertaining to substantive liability or certification issues in the Ahad Lawsuit will be relevant to coverage. This argument misunderstands Illinois law on the duty to defend. Under Illinois law, the insurer's duty to defend is based primarily upon plaintiff's allegations against the insured. *See, e.g., Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010); *St. Paul Fire & Marine Ins. Co. v. Franklin*, 523 F.3d 754, 756 (7th Cir. 2008). In other words, the duty to defend is based upon whether the factual allegations in plaintiff's complaint potentially fall within the coverage for the policy. *Id*. Whether SIU P&S disputes the merits of the Physician

Defendants' claims or can marshal evidence contradicting those claims, either as to liability or certification, is of no consequence. *See, e.g., Scottsdale Ins. Co. v. Walsh Constr. Co.*, 2011 WL 4538456, at *5-7 (N.D. Ill. Sept. 29, 2011) (improper to consider putative insured's own pleading or testimonial evidence to determine insurer's duty to defend); *State Farm Fire & Cas. Co. v. Young*, 2012 IL App (1st) 103736, ¶¶18-19 (insured's denials in his answer in the underlying suit irrelevant because coverage is determined by the allegations in the underlying complaint and not an insured's answer); *Farmers Auto Ins. Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 51 (insured's defense to underlying case was irrelevant and could not manufacture a duty to defend because the allegations in the underlying suit were outside the scope of coverage). Since whether a duty to defend exists is determined by what Physician Defendants allege against SIU P&S, any denial by SIU P&S is irrelevant. Furthermore, SIU P&S (and, for that matter, Physician Defendants) cannot rely on extrinsic facts to create a duty to defend when those facts contradict what is alleged in the underlying complaint. *See Konstant Prods. v. Liberty Mut. Fire Ins. Co.*, 401 Ill. App. 3d 83, 87-88 (1st Dist. 2010) (trial court correctly limited its duty to defend analysis to the complaint; because complaint's allegations barred the duty to defend, extrinsic evidence could not create such a duty).[4]

Given the foregoing, to the extent any evidence adduced in the Ahad Lawsuit contradicts what Physician Defendants themselves have alleged, it cannot be used to create a duty to defend. Because the Court can already determine that there is no duty to defend for the reasons in Allied World's summary judgment motion, it necessarily follows that there is no duty to indemnify

---

[4] To be sure, Allied World's summary judgment motion did point to this Court's order conditionally certifying a collective action under the Equal Pay Act, in support of the argument that the Consent Forms and Ahad Lawsuit are **Related Claims**. Dkt. #40 at 14-15. The order which Allied World cited was based on arguments the Physician Defendants themselves made and evidence they marshaled, and therefore it is not extrinsic evidence inconsistent with their allegations.

7

either. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 398 (Ill. 1993) ("Clearly, where there is no duty to defend, there will be no duty to indemnify . . ."). Accordingly, Physician Defendants' suggestion that the Court must wait for a more developed factual record is wrong, for the fundamental reason that it is Physician Defendants' own allegations, and not the factual record, however developed, that will determine coverage.

At bottom, there is nothing that will be decided in this case that will affect the "ultimate issues" in the Ahad Litigation. Therefore, the *Peppers* doctrine does not apply.

      **B.**    ***Wilton-Brillhart* Abstention Does Not Apply**

The Physician Defendants argue that this Court should abstain from exercising jurisdiction under the *Wilton-Brillhart* doctrine, but the Physician Defendants have failed to meet their burden of showing the *Wilton-Brillhart* factors weigh in their favor. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need").

"*Wilton–Brillhart* abstention applies when 'a federal court [is called upon] to proceed in a declaratory judgment suit where *another suit is pending in state court* presenting the same issues, not governed by federal law, between the same parties.'" *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-95 (1942)) (emphasis added). The doctrine is rooted in concerns about comity, and about preventing federal courts from interfering gratuitously with state courts deciding questions of state law. *Id*. The two Seventh Circuit cases on which Physicians Defendants heavily rely do not say otherwise, and in fact both dealt with parallel state court actions. *Nationwide Insurance v. Zavalis*, 52 F.3d 689, 690 (7th Cir. 1995) (parallel case in Illinois state court); *Sta-Rite Indus. v. Allstate Ins. Co.*, 96 F.3d 281, 283 (7th Cir. 1996) (parallel case in Wisconsin state court).

Courts in the Seventh Circuit consider the following additional factors in determining whether to abstain under *Wilton-Brillhart*: (1) whether the parties to the two actions are identical; (2) whether comparable relief is available to the plaintiff seeking declaratory judgment in another forum or at another time; (3) whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation; (4) and whether the declaratory action presents a question distinct from the issues raised in a parallel state court proceeding *See Ironshore Indem., Inc. v. Synergy Law Grp., LLC*, 926 F. Supp. 2d 1005, 1012 (N.D. Ill. 2013) (citing *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir.2010)).

### 1. There is no parallel state court proceeding.

Here, the most significant *Brillhart* factor—the existence of a parallel state court action—does not exist. Indeed, the Ahad Lawsuit is pending not only in federal court, but in *this* Court, before Your Honor. Thus, the primary basis for a *Brillhart-Wilton* stay is absent here. *See*, *e.g.*, *FirstMerit Bank*, *N.A.* v. *Hosseini*, 2015 WL 4243484, at *7 (N.D. Ill. July 13, 2015) ("Absent evidence of any ongoing parallel state court proceeding, Defendants' request for *Wilton-Brillhart* abstention is denied"). The federal-state comity concerns underpinning the doctrine are not present. Indeed, there is not even a concern about comity with a different *judge*. Further, as discussed above, while Physician Defendants vaguely refer to Illinois law issues they claim will overlap with this case, they do not actually identify any such issues. That is because there are none. Accordingly, there is no parallel state court action, and no risk that a ruling in this case will interfere with a state court's application of state law.

Setting the aside the court in which the *Brillhart* action is pending, the Ahad Lawsuit is not "parallel" to this action in any event. Suits are "parallel" for *Wilton-Brillhart* purposes when

"substantially the same parties are litigating the same issues in two fora," such that "both cases would be resolved by examining largely the same evidence." *Secura Ins. Co. v. Plumb*, 2014 WL 1245441, at *1 (C.D. Ill. Mar. 26, 2014) (citations and internal quotation marks omitted). For the reasons explained above, the insurance law questions that the Court will address in this action are fundamentally distinct from the substantive questions of employment discrimination liability and class certification that the Court will address in the Ahad Lawsuit. *See id.* at *2 (finding that underlying action and insurance coverage action were not parallel because the former would establish insured's liability, if any, while coverage action would resolve insurer's coverage obligations). The parties are litigating distinct legal issues, and there is no need for the Court to examine the evidence developed in the Ahad Lawsuit to rule on the issues in Allied World's summary judgment motion. Accordingly, this action and the Ahad Lawsuit are not parallel.

### 2. The remaining factors weigh against a stay.

The remaining *Brillhart* factors also weigh against granting a stay. First, the parties to the two actions are not identical. While *Brillhart* does not require a perfect identity of parties in both suits, the key factor is that if this action is stayed, at least one party—Allied World—as a non-party to the Ahad Lawsuit, will have no opportunity to litigate the issues that Physician Defendants now claim are effectively dispositive of this action. *See Ironshore Indemn.*, 926 F. Supp. 2d at 1013 (granting stay despite differences in parties and observing that "[w]hat is of consequence is the fact that every party in *this* case will have the opportunity to litigate the same claims in another forum") (emphasis in original). For this same reason, the second *Brillhart* factor, i.e. whether comparable relief is available in another forum at another time, also weighs against a stay. There is no other venue or proceeding in which Allied World can have its

coverage dispute resolved. The insurance coverage issues that Allied World seeks to resolve in this action will not be resolved in the Ahad Lawsuit. Thus, not only are the parties to the suits *not* identical, but a stay would greatly prejudice Allied World because there is no other forum where it can seek comparable relief.

The third factor – whether this case would serve a useful purpose in clarifying the legal obligations and relationships among the parties – also weighs against a stay. Allied World and SIU P&S—which, notably, has *not* requested a stay—have a dispute as to their rights and obligations under Allied World's policies of insurance. Accordingly, Allied World has filed this declaratory judgment action to seek a declaration of its rights, as Illinois law instructs. *See Emp'rs. Ins Co. of Wasau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). Resolving this dispute would of course be useful to Allied World, because it will know definitively what its obligations, if any, to SIU P&S are. But it will also be useful to SIU P&S and to the Physician Defendants. For example, if it is determined that SIU P&S is not entitled to coverage for the Consent Forms, that may be relevant to any efforts by the parties to settle the Ahad Lawsuit.

Fourth, the factor of whether this case presents a question distinct from the issues raised in the underlying action weighs against a stay. As discussed above, the issues of whether the Ahad Lawsuit is a single "proceeding," or, alternatively, whether the Ahad Lawsuit and the Consent Forms are **Related Claims** within the meaning of the applicable policy language are legally distinct questions from whether SIU P&S is substantively liable for any kind of employment discrimination or whether the Physician Defendants' claims are subject to Rule 23 class certification or collective action de-certification.[5]

---

[5] For the same reasons, deciding this action would not result in "duplicative litigation," for purposes of the "useful purpose" factor.

11

### C. The Court Should Not Grant A Stay Under *Landis*

Finally, the Physician Defendants suggest that the Court should grant a stay under its inherent power to manage cases under *Landis v. North American Co.*, 299 U.S. 248 (1936) in the interest of preserving "economy of time and effort." Dkt. #47 at 8. Physician Defendants bear the burden of proving that such a stay is necessary. *See Clinton*, 520 U.S. at 708. "[I]f there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 254. "In ruling on a motion to stay proceedings, a court shall consider the likelihood of a stay to: (1) unduly prejudice or tactically disadvantage the non-moving party, (2) simplify the issues in question and streamline the trial, (3) reduce the burden of litigation on the parties and on the court." *Helferich Patent Licensing, L.L.C. v. N.Y. Times Co.*, 2012 WL 1813665, at *1 (N.D. Ill. May 8, 2012) (citation and internal quotation marks omitted).

Staying this case will not simplify the issues in question or reduce the burden on the parties or the Court, because, for the reasons explained above, allowing the Ahad Lawsuit to progress will do nothing to resolve the parties' dispute over whether Allied World owes a duty to defend. Thus, granting a stay in this case will not preserve "economy of time and effort," but rather delay resolution on the duty to defend for no reason at all, which is insufficient to grant a stay under *Landis*. To the contrary, Allied World will be prejudiced by a delayed resolution of its coverage defenses if the Court grants a stay, particularly as there is no assurance as to when the Ahad Lawsuit will conclude. *See id.* (denying stay where "[t]he potential for a delay lasting years is prejudicial to [the non-movant], and the term of the proposed delay is indefinite"). Further, because there is at least a "fair possibility" of prejudice to Allied World from a stay, the

Physician Defendants are required to establish a "clear case of hardship or inequity," which they have not done.

## IV.     CONCLUSION

The Physician Defendants have not, and cannot, meet their burden of showing that this case should be stayed under *Peppers*, *Wilton-Brillhart*, or *Landis*.  No issue raised in Allied World's summary judgment motion will preempt any fact issue to be determined in the Ahad Lawsuit.  Accordingly, there can be no benefit to any party from delaying a resolution of Allied World's summary judgment motion.  Moreover, this case has progressed nearly to its conclusion and Allied World's summary judgment motion will soon be fully briefed.  Thus, Allied World will be prejudiced if it is denied a timely a resolution of its coverage defenses.  Allied World therefore respectfully requests that the Court deny the Physician Defendants' request to stay this action.

DATED:     July 16, 2018          Allied World Specialty Insurance Company


                                           By: /s/ Jonathan A. Cipriani
                                                  One of its Attorneys


Ommid C. Farashahi
Michael T. Skoglund
Jonathan A. Cipriani
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Ph.:    312-762-3100
Fax:    312-762-3200

*Attorneys for Allied World Specialty Insurance Company*

13

**CERTIFICATE OF SERVICE**

On July 16, 2018, I caused to be served a true and correct copy of the foregoing document upon all counsel of record via the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America and the State of Illinois that the foregoing is true and correct.

DATED this 16th day of July, 2018, at Chicago, Illinois.

/s/ Jonathan A. Cipriani
*Counsel for Allied World Specialty Insurance Company*