E-FILED
Wednesday, 31 March, 2021  09:27:55 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **ALLIED WORLD SPECIALTY INSURANCE COMPANY f/k/a DARWIN NATIONAL ASSURANCE COMPANY, a Delaware Corporation,** | ) ) ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 17-cv-03139** |
| **v.** | ) ) | |
| **SIU PHYSICIANS & SURGEONS, INC., an Illinois Corporation, SAJIDA AHAD, JAN RAKINIC, CHRISTINA VASSILEVA, and ERICA ROTONDO,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## <u>OPINION</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before the Court are Plaintiff Allied World Specialty
Insurance Company's ("Allied") Motion for Summary Judgment, d/e
39, and Allied's Motion to Strike Improper Argument and Evidence
from Defendant SIU Physician & Surgeons, Inc.'s Memorandum in
Opposition to Plaintiff's Motion for Summary Judgment ("Motion to
Strike"), d/e 51.  For the reasons discussed below, both motions are
granted.

# I. PROCEDURAL HISTORY

This insurance dispute arises from an underlying lawsuit filed by Sajida Ahad, M.D., ("Ahad") against the Board of Trustees of Southern Illinois University ("SIU") and SIU Physicians & Surgeons, Inc. ("SIU P&S").  See Ahad v. Bd. of Trs. of S. Ill. Univ., 15-cv-3308 (C.D. Ill. filed October 27, 2015) (hereinafter "the Ahad lawsuit"). The Ahad lawsuit, alleging gender-based pay discrimination, sought certification of a collective action under the Fair Labor Standards Act (FLSA) and certification of a Federal Rule of Civil Procedure 23 class on claims under the Illinois Equal Pay Act, the Illinois Civil Rights Act, and Title VII of the Civil Rights Act of 1964, as amended.

On June 9, 2017, Allied filed its complaint in this case, d/e 1, against defendant SIU P&S seeking a declaratory judgment that Allied has no duty to indemnify SIU P&S in connection with the Ahad lawsuit.  After this Court conditionally certified an FLSA collective action in the Ahad lawsuit, Allied has twice amended its complaint in this case to add as defendants in this action Ahad and three physicians who opted in to the conditionally certified collective action by filing consent forms—doctors Jan Rakinic, Christina

Vassileva, and Erica Rotondo.  See Am. Compl., d/e 22; Second Am.
Compl., d/e 33.

In proceedings before the assigned United States Magistrate
Judge following the close of discovery, the parties reported that they
would be filing motions for summary judgment.  See Minute Entry
April 23, 2018.  Shortly thereafter, Allied filed the motion for
summary judgment now pending before the Court.  In the motion
for summary judgment, Allied seeks a declaration that Allied has no
duty to defend or indemnify SIU P&S on the EEOC Charge and the
Ahad lawsuit, including the consent forms, under any of the
insurance policies issued by Allied to SIU P&S.

SIU P&S did not file its own motion for summary judgment,
but rather in SIU P&S' response to Allied's motion for summary
judgment, SIU P&S urges the Court to *sua sponte* grant summary
judgment in favor of SIU P&S.  After SIU P&S filed its response to
Allied's motion for summary judgment, Allied filed the motion to
strike that is also pending before the Court and which the Court
addresses first.

## II. MOTION TO STRIKE

In conjunction with its reply, d/e 53, in support of its motion for summary judgment, Allied filed a motion to strike, d/e 51, which the Court now considers before turning to the motion for summary judgment.  In the motion to strike, Allied asks the Court to strike, pursuant to Federal Rule of Civil Procedure 37(c)(1), certain exhibits filed in support of SIU P&S' Motion to Decertify Collective Action in the Ahad lawsuit and relied on in SIU P&S' Memorandum in Opposition to Allied World's Motion for Summary Judgment, d/e 45, and any argument in the memorandum based on those exhibits.  The exhibits at issue are the transcripts of the depositions of Ahad, Rakinic, and Vassileva, along with the exhibits attached to each of the deposition transcripts, as well as the declaration of Wendy Cox-Largent.

In most cases, including this one, Federal Rule of Civil Procedure 26(a)(1) requires parties to make certain initial disclosures "without awaiting a discovery request."  Fed. R. Civ. P. 26(a)(1) (allowing court to order otherwise); but see id. R. 26(a)(1)(B) (exempting certain types of cases).  Under Rule 26(a)(2)(e), a party must supplement its disclosures "when required under Rule 26(e)."

That rule, in turn, requires supplementation "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Id. R. 26(e)(1)(A).

Rule 37(c)(1) supplies a remedy for initial-disclosure and supplementation violations. That Rule provides, in part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Seventh Circuit has held that "[t]he exclusion of non-disclosed evidence is 'mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.'" Rossi v. City of Chicago, 790 F.3d 729, 737–38 (7th Cir. 2015) (quoting Musser v. Gentiva Health Servs., 356 F.3d 751, 758 (7th Cir. 2004)); accord Cripe v. Henkel Corp., 858 F.3d 1110, 1112 (7th Cir. 2017) (citing Hassebrock v. Bernhoft, 815 F.3d 334, 341 (7th Cir. 2016) and Novak v. Board of Trs. of S. Ill. Univ., 777 F.3d 966, 972 (7th Cir. 2015)). Rule 37(c)(1) allows the court to impose lesser

sanctions "[i]n addition to or instead of this sanction." See Malik v. Falcon Holdings, LLC, 675 F.3d 646, 649–50 (7th Cir. 2012) (citing Ball v. City of Chicago, 2 F.3d 752 (7th Cir. 1993)) ("[Rule 37] gives the judge discretion to match a remedy to the wrong."); Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 514 (7th Cir. 2011) ("Whether a failure to comply with Rule 26(a) or (e) is substantially justified, harmless, or warrants sanctions is left to the broad discretion of the district court." (citing David v. Caterpillar, Inc., 324 F.3d 851, 857 (7th Cir. 2003)).

In Allied's motion to strike, Allied urges the Court to strike the exhibits and argument based on the exhibits because the documents relied on by SIU P&S in its response to Allied's motion for summary judgment were not listed in SIU P&S' initial disclosures or any supplement to those disclosures. Mem. Supp. Mot. to Strike 2, d/e 52. Allied further argues that the documents are not material to the motion for summary judgment and should not be considered for that reason as well. Id.

In support of its Rule 37(c)(1) argument, Allied recounts the timeline discovery has followed in this case. SIU P&S provided Allied with SIU P&S' initial disclosures on December 15, 2017. Id.

In its initial disclosures, SIU P&S identified the following as

documents SIU P&S may use to support its claims or defenses:

> (a) Allied World's Healthcare Organizations Management
> Liability Package Policies issued to SIU P&S for the periods
> November 4, 2013 to November 3, 2014 (the "2013 Policy");
> November 4, 2014 to November 1, 2015 (the "2014 Policy");
> November 1, 2015 to November 1, 2016 (the "2015 Policy");
> and November 1, 2015 to November 1, 2017 (the "2016
> Policy") (collectively, the "Policies").

> (b) All pleadings relating to the Ahad EEOC Charge, to the
> extent not privileged or otherwise protected for discovery or
> disclosure.

> (c) All pleadings relating to the Ahad Lawsuit, to the extent not
> privileged or otherwise protected from discovery or
> disclosure.

> (d) All pleadings relating to class action or collective action
> aspects of the Ahad Lawsuit, including the Rakinic and
> Vassileva Consent Forms.

> (e) Communications involving SIU P&S, its insurance broker
> and/or Allied World, relating to the Ahad EEOC Charge, the
> Ahad Lawsuit, and/or the Rakinic and Vassileva Consent
> Forms, including communications providing SIU P&S
> insurance broker and/or Allied World with notice of claims.

Id. at 2-3.  SIU P&S never supplemented these initial disclosures.

Id. at 3.  Discovery closed on March 31, 2018, and Allied filed its

motion for summary judgment shortly thereafter.  Id.  SIU P&S

subsequently sought and was granted two extensions of time to

respond to Allied's motion for summary judgment.  See Motions for

Extension of Time, d/e 41, 42; Minute Entries dated May 1, 2018 and June 11, 2018 (granting motions for extension of time). In the interim covered by these extensions of time, SIU P&S filed a motion to decertify the conditionally certified collective action in the Ahad lawsuit on June 15, 2018. Mem. Supp. Mot. to Strike 3. Soon after, SIU P&S filed its response to Allied's motion for summary judgment in this case, relying on the exhibits filed in connection with the motion to decertify which are the subject of the motion to strike.

Allied contends that exclusion of these documents and the argument based on them is mandatory under Rule 37 because SIU P&S did not identify the documents in SIU P&S' initial disclosures or any supplement thereto. Id. at 4-5. In support, Allied adopts a narrow reading of the definition of 'pleading' in Federal Rule of Civil Procedure 7 which includes only complaints, answers to complaints, and replies to answers among others. Id. at 5. Allied argues that the failure to disclose is not substantially justified or harmless because Allied suffered surprise and prejudice as a result, Allied will not have an opportunity to cure the prejudice, and the circumstances under which SIU P&S was able to rely on the

disputed documents is "suspicious" although perhaps not rising to the level of bad faith or willfulness.  Id. at 6-7.

In response to the motion to strike, SIU P&S contends that the disputed documents fall within the scope of Allied's own initial disclosures which included "documents generated in connection with the Ahad claim, as defined by Allied World in the Complaint in this action, including but not limited to pleadings, court orders, motions, and responses thereto."  Mem. of Def. SIU P&S in Opposition to Allied World's Mot. to Strike 2, d/e 55 (hereinafter "Resp. to Mot. to Strike").  For that reason, SIU P&S argues that there has been no violation of Rules 26 or 37.  Id. at 3.  SIU P&S further argues that even to the extent there was a failure to disclose, any failure was technical and harmless and, therefore, does not warrant exclusion under Rule 37.  Id.

Allied's argument that the documents at issue do not fall within the scope of SIU P&S's initial disclosures finds support in the plain text of Rule 7 and the caselaw.  Rule 7 states that "[o]nly these pleadings are allowed: a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a

third-party complaint; and if the court orders one, a reply to an answer.  Fed. R. Civ. P. 7(a) (internal numbering omitted).  Rule 7(b) refers to "motions and other papers."  Here, the motion to decertify and the associated exhibits clearly do not fall within Rule 7(a)'s definition of "pleadings," but in the category of Rule 7(b)'s "motions and other papers."

Allied's narrow reading of Rule 7(a) is also supported by the caselaw.  The Seventh Circuit has, for example, concluded that motions to dismiss and motions for summary judgment are not "responsive pleadings." Haven v. Rzeczpospolita Polska, 215 F.3d 727, 732 (7th Cir. 2000); Edelman v. Belco Title & Escrow, LLC, 754 F.3d 389, 394-95 (7th Cir. 2014); see also DeBoer v. Vill. of Oak Park, 90 F. Supp. 2d 922, 923 (N.D. Ill. 1999) (motion for reconsideration and supporting materials not "pleadings"). Following this logic, the Court sees no reason to treat a motion to decertify differently.  Accordingly, the Court finds that the disputed evidence does not fall within the scope of SIU P&S' disclosures.

Having found a failure to disclose the disputed evidence, the Court still must consider whether exclusion of that evidence is warranted under Rule 37.  Here, the Court concludes that exclusion

is mandatory under Rule 37(c)(1) because the non-disclosure was not substantially justified or harmless.  See Rossi, 790 F.3d at 737– 38.  Four factors guide the Court's analysis of whether the non-disclosure is justified or harmless: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date."  David v. Caterpillar, 324 F.3d 851, 857 (7th Cir. 2003).

Consideration of the first, second, and fourth of these factors compels the Court's conclusion that exclusion is warranted here. The first and fourth factors are intertwined in this particular case. Allied is not a party to the Ahad lawsuit and, therefore, did not have an opportunity to participate in the depositions or to review the exhibits used at the depositions prior to the filing of SIU P&S' response to Allied's motion for summary judgment.  The disputed evidence forms the basis for the entirety of SIU P&S' statement of additional material facts and the argument in the response that the consent forms and the Ahad lawsuit do not share a factual nexus. SIU P&S' reference to pleadings in its disclosures would have

reasonably led Allied to believe that SIU P&S did not intend to rely on such disputed evidence in this case. Had Allied known sooner that SIU P&S did intend to rely on the disputed evidence, the parties could have attempted to reach an agreement concerning its use and requested Court intervention if they were unable to do so.

The timeline of events here is concerning as well. With Allied's motion for summary judgment filed on April 30, 2018, SIU P&S' response was initially due on May 21, 2018. On May 2, 2018, the parties in the Ahad lawsuit—which again, Allied is not a party to— filed a proposed briefing schedule on the decertification motion, which required that motion to be filed by June 15, 2018, which was the date on which the decertification motion was ultimately filed. Had SIU P&S not sought and received two extensions of time in which to file its response to the motion for summary judgment here, the disputed evidence would not have been part of the record in the Ahad lawsuit. Moreover, the depositions of Vassileva and Rakinic were not even scheduled to occur until May 22 and 30, 2018, respectively, so the transcripts of those depositions would not have even existed had SIU P&S' response to the motion for summary judgment been filed as originally scheduled. Had SIU P&S notified

Allied when SIU P&S requested the extensions that SIU P&S intended to rely on this evidence, Allied could have better prepared or sought court intervention sooner in order to limit that evidence's use.  Accordingly, consideration of the relevant factors leads the Court to conclude that SIU P&S's non-disclosure was not substantially justified or harmless and, therefore, exclusion of the disputed evidence is mandatory.

The Seventh Circuit has urged district courts to "carefully consider Rule 37(c), including the alternative sanctions available, when imposing exclusionary sanctions that are outcome determinative." <u>Musser</u>, 356 F.3d at 760.  In this case, though, even if the Court were to consider the disputed evidence submitted in response to Allied's motion for summary judgment, the outcome would still be the same because under Illinois law the disputed evidence is not relevant to this coverage dispute, for the reasons discussed in greater detail below.

### III.   MOTION FOR SUMMARY JUDGMENT

**A. Facts**

The following facts are drawn largely from Allied's statement of undisputed material facts. The court discusses any material factual disputes in its analysis.

Allied issued four Healthcare Organizations management Liability Package Policies, each containing an Employment Practices Liability Coverage Section (the "EPL Coverage Section") to SIU P&S for policy periods November 4, 2013 to November 4, 2014 (the "2013 Policy"), November 4, 2014 to November 1, 2015 (the "2014 Policy"), November 1, 2015 to November 1, 2016 (the "2015 Policy"), and November 1, 2016 to November 1, 2017 (the "2016 Policy"). Pl.'s Statement of Undisputed Material Facts ¶ 1 (hereinafter "Pl.'s SOF"). Each policy contains an EPL Coverage Section limit of liability of $2 million, subject to any applicable retention. Id. SIU P&S did not renew coverage with Allied after the 2016 Policy ended. Id. at ¶ 2. The policies contain identical terms, conditions, and exclusions, except for the policy period. Id. at ¶ 3.

The Insuring Agreement in the EPL Coverage Section states as follows:

> The Insurer shall pay on behalf of any Insured the Loss arising from a Claim, first made during the Policy Period (or Discovery Period, if applicable) against such Insured for

any Wrongful Act, and reported to the Insurer in accordance with Section V. of the General Terms and Conditions and Section IV. of this Coverage Section.

Id. at ¶ 4.  In the EPL Coverage Section, a "Claim" is defined to mean any:

> (1) written demand for monetary, non-monetary or injunctive relief made against an Insured;
>
> (2) judicial, administrative or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief, commenced against an Insured, including any appeal therefrom, which is commenced by:
>
>> (a) service of a complaint or similar pleading;
>>
>> (b) return of an indictment or similar document (in the case of a criminal proceeding); or
>>
>> (c) receipt or filing of a notice of charges;
>
> (3) arbitration or mediation proceeding commenced against an Insured by service of a demand for arbitration or mediation;
>
> (4) notification of an investigation of an Insured by the Equal Employment Opportunity Commission ("EEOC") or similar governmental agency commenced by the filing of a notice of charges, formal investigative order or similar document;
>
> (5) audit of an Insured conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"), but only if commenced by the receipt of a notice of violation, order to show cause, or a written demand for monetary or non-monetary or injunctive relief; or
>
> (6) written request to toll or waive the applicable statute of limitations, or to waive any contractual time-bar, relating to a potential Claim against an Insured for a Wrongful Act.

Id. at ¶ 5.  That same section further provides that "[a] Claim shall be deemed first made when any Insured first receives notice of the Claim."  Id.  The Policies' General Terms and Conditions defines Related Claims as "all Claims for Wrongful Acts based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events."  Id. at ¶ 6.

The Policies' General Terms and Conditions provides that "[a]ll Related Claims shall be deemed to be a single Claim made on the date on which the earliest Claim within such Related Claims was first made, or when the earliest Claim within such Related Claims is treated as having been made . . . whichever is earlier."  Id. at ¶ 7. The General Terms and Conditions of the Policies also provides, in relevant part, that "in no event shall notice of any Claim be provided to the Insurer later than ninety (90) days after the end of the Policy Period or Discovery Period if applicable."  Id. at ¶ 8.

Dr. Sajida Ahad is a former Assistant Professor of Surgery/Bariatric Surgeon at the Southern Illinois University School of Medicine, and a female citizen of Pakistan of South Asian

national origin.  Id. at ¶ 9.  On or about July 28, 2014, Ahad filed a

Charge of Discrimination with the Equal Employment Opportunity

Commission (the "EEOC Charge"), naming SIU P&S, among others,

as a respondent.  Id. at ¶ 10.  SIU P&S first received notice of the

EEOC Charge during the Policy Period of the 2013 Policy, i.e.,

between November 4, 2013 and November 4, 2014.  Id. at ¶ 11.

In the EEOC Charge, Ahad alleged discrimination based on

sex and national origin in violation of Title VII of the Civil Rights Act

of 1964 and the Equal Pay Act (the "EPA").  Id. at ¶ 12.  On October

27, 2015, after receiving a "right to sue" letter from the EEOC, Ahad

filed a Class Action and Collective Action Complaint in this Court,

Case No. 15-cv-3308, captioned Sajida Ahad, M.D. on behalf of

herself and all others similarly situated v. Southern Illinois School

of Medicine, Southern Illinois University, Board of Trustees of

Southern Illinois University, SIU Healthcare, Inc., and SIU

Physicians & Surgeons, Inc. (the "Lawsuit").  Id. at ¶ 13.

In the Lawsuit, Ahad alleges that she has received unequal

pay for equal work as compared with her male colleagues for the

approximately six years she worked for SIU School of Medicine and

SIU P&S.  Id.  Ahad claims that, after she resigned, her

replacement—a male who recently completed his residency—was paid a starting salary $75,000 higher than Ahad's final salary.  Id. Ahad also believes that her replacement was paid a $25,000[1] signing bonus which she never received and was guaranteed annual income in excess of $300,000.  Id.  Ahad's Complaint alleges that she is bringing suit on her behalf and on behalf of other similarly situated individuals.  Id.  She asserts individual and collective action claims under the EPA, Title VII, the Illinois Equal Pay Act of 2003, and the Illinois Civil Rights Act of 2003.  Id.  Paragraph 15 of the amended complaint expressly references the prior filing of Ahad's July 2014 EEOC Charge—inclusive of the Title VII discrimination claims—and her receipt of a "right to sue" letter from the EEOC.  Id.

SIU P&S first received notice of the suit during the Policy Period of the 2015 Policy, i.e., between November 1, 2015 and November 1, 2016.  Id. at ¶ 14.  The EEOC Charge and what SIU P&S refers to as "the individual claim of Sajida Ahad" in the suit constitute Related Claims because they are both Claims for

---

[1] Allied's Statement of Facts states that the signing bonus was $2,500, but Ahad's Complaint in 15-cv-3308 states that the signing bonus was $25,000. See Am. Class Action and Collective Action Compl. ¶ 44, d/e 31.

Wrongful Acts based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.  Id. at ¶ 15.  Therefore, the EEOC Charge and the suit constitute a single Claim first made on the date on which the earliest Claim within such Related Claims was first made.  Id.

The EEOC Charge and what SIU P&S refers to as "the individual claim of Sajida Ahad" in the suit are deemed first made during the Policy Period of the 2013 Policy because SIU P&S first received notice of the EEOC Charge during that Policy Period.  Id. at ¶ 16.  There is no coverage for the EEOC Charge and what SIU P&S refers to as "the individual claim of Sajida Ahad" in the suit under the 2014 Policy, the 2015 Policy, or the 2016 Policy because that claim is not a Claim first made during any of those Policy Periods. Id. at ¶ 17.  SIU P&S first reported the Claim to Allied on or after April 24, 2017.  Id. at ¶ 18.

On September 29, 2017, the cause of action was conditionally certified as a collective action with respect to Count I, under the federal Equal Pay Act.  Id. at ¶ 20.  On October 27, 2017 and

October 31, 2017, respectively, plaintiff consent forms were filed in the suit on behalf of Dr. Jan Rakinic and Dr. Christina M. Vassileva (collectively, the "Consent Forms").  Id. at ¶ 21.  Pursuant to 29 U.S.C. § 216(b), Rakinic and Vassileva became party plaintiffs in the suit by filing the Consent Forms.  Id.  On November 21, 2017, Allied received correspondence from SIU P&S' insurance broker forwarding copies of the Consent Forms.  Id. at ¶ 22.  A third plaintiff consent form was filed in the suit on behalf of Dr. Erica Rotondo on January 5, 2018.  Id. at ¶ 24.  SIU P&S does not seek coverage for the Rotondo consent form.  Id. at ¶ 25.  SIU P&S admits that any claimants who make claims after November 1, 2017, including any future members of any class that may be certified in the suit, are not entitled to coverage under the Policies, because the last Policy expired on November 1, 2017.  Id. at ¶ 26.  The only matters for which SIU P&S seeks coverage are the Consent Forms.  Id. at ¶ 27.  SIU P&S asserts the Consent Forms are Claims first made during the Policy Period of the 2016 Policy.  Id.

## B. Legal Standard

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The movant bears the initial responsibility of informing the Court of

the basis for the motion and identifying the evidence the movant

believes demonstrates the absence of any genuine dispute of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A

genuine dispute of material fact exists if a reasonable trier of fact

could find in favor of the nonmoving party.  Carroll v. Lynch, 698

F.3d 561, 564 (7th Cir. 2012).  When ruling on a motion for

summary judgment, the Court must construe all facts in the light

most favorable to the non-moving party and draw all reasonable

inferences in that party's favor.  Woodruff v. Mason, 542 F.3d 545,

550 (7th Cir. 2008).

"In a suit where the federal court's subject matter jurisdiction

is based on diversity, such as this one, the forum state's choice of

law rules determine the applicable substantive law."  Sound of

Music Co. v. Minn. Mining & Mfg. Co., 477 F.3d 910, 915 (7th Cir.

2007).  The parties do not dispute that Illinois substantive law

applies to this dispute.

The construction of an insurance contract is a question of

law.  Chatham Corp. v. Dann Ins., 812 N.E.2d 483, 488 (Ill. App.

Ct. 2004) (citing <u>Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.</u>,
655 N.E.2d 842, 846 (Ill. 1995)).  The same rules of construction
that apply to other types of contracts also apply to insurance
contracts.  <u>Country Mut. Ins. Co. v. Teachers Ins. Co.</u>, 755 N.E.2d
136, 139 (Ill. App. Ct. 2001).  That is, this Court must ascertain
and give effect to the intent of the parties, which is determined by
examining the language of the contract.  <u>Stark v. Ill. Emcasco Ins.</u>
<u>Co.</u>, 869 N.E.2d 957, 960 (Ill. App. Ct. 2007).  In doing so, this
Court construes the policy as a whole, taking into account the type
of insurance, the risks undertaken, and the purpose of the
contract.  <u>Country Mut. Ins. Co.</u>, 755 N.E.2d at 139 (citation
omitted).  "A court must read the provision in its entire factual
context and not in isolation."  <u>Allstate Ins. Co. v. Amato</u>, 865 N.E.2d
516, 522 (Ill. App. Ct. 2007).  If the terms of the policy are clear and
unambiguous, they must be given their plain and ordinary
meaning.  <u>Stark</u>, 869 N.E.2d at 961 (quoting <u>Rohe v. CNA Ins. Co.</u>,
726 N.E.2d 38, 41 (Ill. App. Ct. 2000)).  If the terms of the policy are
susceptible to more than one meaning, then the terms are
ambiguous.  <u>Pekin Ins. Co. v. Wilson</u>, 930 N.E.2d 1011, 1017 (Ill.
2010) (quoting <u>Am. States Ins. Co. v. Koloms</u>, 687 N.E.2d 72, 75 (Ill.

1997)).  Ambiguities are construed strictly against the insurer who
drafted the policy.  Id.  "Although 'creative possibilities' may be
suggested, only reasonable interpretations will be considered."
Hobbs v. Hartford Ins. Co. of the Midwest, 823 N.E.2d 561, 564 (Ill.
2005) (citation omitted).  Thus, the Court "will not strain to find an
ambiguity where none exists."  Id. (citation omitted).  While policy
terms limiting an insurer's liability shall be liberally construed in
favor of coverage, this rule of construction only comes into play
when the policy is ambiguous.  Id. (citation omitted).

Under Illinois law, "[c]ourts strictly construe notice
requirements in claims-made policies and view notice requirements
as valid conditions precedent."  Hanover Ins. Co. v. R.W. Dunteman
Co., 446 F. Supp. 3d 336, 348 (N.D. Ill. 2020) (citing Exec. Risk.
Indem., Inc. v. Charter Benefit Servs., Inc., 2005 WL 1838433, at *6
(N.D. Ill. July 29, 2005)).  "Illinois law is clear that the issue of
prejudice is irrelevant in the context of a 'claims-made' insurance
policy."  Pac. Ins. Co. v. Eckland Consultants, Inc., 2001 WL
1388279, at *3 (N.D. Ill. Nov. 5, 2001).

## C. Analysis

SIU P&S concedes there is no coverage for Ahad's EEOC charge.  <u>See</u> Second Am. Compl. ¶ 51; Ans. ¶ 51.  SIU P&S also concedes the suit and the EEOC charge are related claims under the policies, such that there is no coverage for the suit.  <u>See</u> Second Am. Compl. ¶ 31; Ans. ¶ 31.  SIU P&S also concedes there is no coverage for the Rotondo consent form or for others who may have attempted to join the suit after November 1, 2017.  <u>See</u> Second Am. Compl. ¶ 84; Ans. ¶ 84.

The parties agree that the only issue in dispute is whether Allied has a duty to defend and indemnify SIU P&S for the Consent Forms filed by Rakinic and Vassileva.  <u>See</u> Pl.'s Mot. Summ. J. 10; Resp. 17.  Allied contends the Consent Forms are part of the Ahad claim that SIU P&S did not report under the terms of the policies, while SIU P&S contends the Consent Forms are new and distinct claims first made and reported during the Policy Period of the 2016 Policy.

All of the policies are "claims made and reported policies."  Any claim reported to Allied for coverage must be first made during the policy period of a policy and reported no later than ninety days after

the expiration of the policy.  Pl.'s SOF ¶ 4 (quoting Ex. A-D, EPL Coverage Section, § I.A); Pl.'s SOF ¶ 8 (quoting Ex. A-D, General Terms and Conditions, § V.B).  The policies define related claims as "all Claims for Wrongful Acts based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events."  Pl.'s SOF ¶ 6 (quoting Ex. A-D, General Terms and Conditions, § II.F).

Allied argues that the Consent Forms are not separate and distinct claims, but they are simply documents by which Rakinic and Vassileva joined the suit as opt-in plaintiffs.  SIU P&S concedes the suit—or at least Ahad's claim in the suit—is a related claim to the EEOC charge, and because the EEOC charge was not timely reported under any of the Policies, there is no coverage.  Pl.'s Mem. Supp. Mot. Summ J. 11.  Allied contends that just because the suit now includes new opt-in plaintiffs, that does not make the allegations of the new plaintiffs new claims.  Id. (citing Cmty. Found. For Jewish Educ. V. Fed. Ins. Co., 16 F. App'x 462, 466-67 (7th Cir. 2001)).  In Allied's view, the suit is still the same untimely reported "judicial proceeding" under Section II.B of the EPL

Coverage Section of the Policies that it was before Rakinic and Vassileva opted in by filing the Consent Forms.  Id. (citing Great Am. Ins. Co. v. Sea Shepherd Conservation Soc'y, 2014 WL 2170297, at *6-7 (W.D. Wash. May 23, 2014) and Checkrite Ltd., Inc. v. Ill. Nat'l Ins. Co., 95 F. Supp. 2d 180, 195-96 (S.D.N.Y. 2000)).  Allied argues because the EEOC charge was not timely reported and because the suit is a related claim to the EEOC charge, then if the Consent Forms are merely part of the suit and not new and distinct claims, there is also no coverage for the Consent Forms.  Allied also argues that even if the Consent Forms are new and distinct claims, they are related claims to the EEOC Charge and the suit, such that they all constitute a single untimely reported claim.  Id. at 12.

SIU P&S posits two reasons why the Court should deny Allied's motion for summary judgment and instead sua sponte grant summary judgment for SIU.  First, SIU P&S argues that both the related claims provision and the policies' definition of related claims are ambiguous and should therefore be construed against Allied and in favor of coverage.  Resp. 17.  Second, SIU P&S argues that

the Consent Forms are not practically or logically related to Ahad's claims in the suit.  Id. at 17-18.

At the outset, the Court notes that the Seventh Circuit has stated that while "[g]ranting summary judgment sua sponte is permissible, . . . it is a hazardous procedure which warrants special caution.  Osler Inst., Inc. v. Forde, 333 F.3d 832, 836 (7th Cir. 2003) (citation omitted).  The Seventh Circuit has "repeatedly explained that it is appropriate to grant summary judgment *sua sponte* only when it is clear that neither side will be disadvantaged or unfairly surprised by the move."  R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO, 335 F.3d 643, 650 (7th Cir. 2003) (collecting cases).  For those reasons, even if the Court did not reach the conclusion the Court has made, the Court would still decline to sua sponte grant summary judgment in favor of SIU P&S.

The related claims provision of the policies states in relevant part that "[a]ll Related Claims shall be deemed to be a single Claim made on the date on which the earliest Claim within such Related Claim was first made."  Pl.'s Mot. Summ. J., Ex. A-D, General Terms and Conditions, § V.D.  And the policies define related claims

as "all Claims for Wrongful Acts based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events" as previously noted.  Pl.'s SOF ¶ 6 (quoting Ex. A-D, General Terms and Conditions, § II.F).  SIU P&S argues that both sections of the policies are ambiguous but focuses its discussion on the related claims definition.  See Resp. 19-20.  SIU P&S contends the definition is ambiguous because the definition uses the adjective "related" in two places to define the term and because the definition fails to provide any meaningful guidance as to the scope or limit of coverage or as to which claims should be considered related claims. Id. at 20.

In support of its ambiguity argument, SIU P&S cites to American Medical Security, Inc. v. Executive Risk Specialty Ins. Co., 393 F. Supp. 2d, 693, 705-77 (E.D. Wis. 2005), in which the district court found a similar related claims provision to be ambiguous. SIU P&S argues the related claims provision in the policies here is even more ambiguous than the provision in American Medical,

because the provision in <u>American Medical</u> contained additional descriptors not used in the policies here.  Resp. 22.

"A policy is not made ambiguous simply because the parties disagree on how it applies to a given situation."  <u>Gregory v. Home Ins. Co.</u>, 876 F.2d 602, 605 (7th Cir. 1989) (applying Indiana substantive law).  In <u>Gregory</u>, the district court "found the policy's language to be unambiguous, and that it should be given its 'plain and ordinary meaning.'"  <u>Id.</u>  In <u>Gregory</u>, the Seventh Circuit specifically rejected the argument that the meaning of the word related should be construed to mean only causally related, finding that would "require[ ]a drastic restriction of the natural scope of the definition of the word 'related.'"  <u>Id.</u> at 606.  Instead, the Seventh Circuit looked to the common understanding of the word to arrive at a definition of the term "related" to cover "a very broad range of connections, both causal and logical."  <u>Id.</u> at 606 n.5 (quoting Black's Law Dictionary definition of related as "[s]tanding in relation, connected; allied; akin").

Although the district court in <u>American Medical</u> found the related claims provision at issue there to be ambiguous, the court went on to impose what the court referred to as a "limiting

construction" on the definition, construing the related claims

provision as requiring a causal or logical relationship in order for

two or more claims to be considered related, following the Seventh

Circuit's reasoning in <u>Gregory</u>.  <u>American Medical</u>, 393 F. Supp. 2d

at 706-07.  Here, the Court does not find the related claims

provision to be ambiguous.  But, even if the provision were

ambiguous, and the Court were to impose a limited construction on

that term following the decisions in <u>Gregory</u> and <u>American Medical</u>,

the conclusion would still be the same because the Court finds the

claims to be causally and logically related.

    Although the Seventh Circuit has noted that "[a]t some point,

of course, a logical connection may be too tenuous reasonably to be

called a relationship, and the rule of restrictive reading of broad

language would come into play[,]" the facts of this case—that SIU

P&S compensation plan was administered in such a way as to harm

Ahad and the opt-in plaintiffs by resulting in unequal pay for equal

work—fit squarely within the commonly accepted definition of what

constitutes 'related.'  <u>Gregory</u>, 876 F.2d at 606.  The consent forms

are both causally and logically connected.  But for the Ahad suit,

the Consent Forms would not exist.  The Consent Forms came to be

in the suit as a result of the conditional certification order.  And the claims are logically connected because they arise out of the same common allegations of gender-based pay discrimination.

SIU P&S next argues that even if the Court does not find the related claims provision and the definition of related claims to be ambiguous, the Court should still deny Allied's motion for summary judgment and enter summary judgment for SIU P&S because the claims of Ahad, Rakinic, and Vassileva are not related claims. Resp. 23.  SIU P&S disputes that the Consent Forms are part of the same claim merely be virtue of being part of the same suit.  Id.  SIU P&S notes that plaintiffs in a collective action each individually pursues her own claim and that opt-in plaintiffs have the right to proceed individually—a right confirmed by the language of the Consent Forms, which state that the opt-in plaintiffs may withdraw their consent and proceed with their claims at any time. A collective action allows plaintiffs to pool their resources in order to vindicate their rights, resulting in lower individual costs. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, (1989).  In this manner, collective action proceedings promote judicial economy by allowing for the efficient resolution of common issues of law and

fact arising from the same alleged discriminatory activity.  Id.
Although it is true, as SIU P&S notes, that resolution of each
individual plaintiff's claims would require separate proofs and
defenses, the Court has already acknowledged as much in its
decertification order in the Ahad lawsuit.  Whether the opt-in
plaintiffs can pursue their own claims individually is not relevant to
the issue of whether the Consent Forms constitute part of the same
claim as the Ahad claim.  Although different factual proof would
likely be needed to establish the individual claims as to both
liability and to damages, the allegations of the underlying complaint
are that that the plaintiffs were injured by the same discriminatory
policies.  Although Ahad, Rakinic, and Vassileva held different
positions, they all allege that they were injured by the same
discriminatory policies or practices.

   The policies define a claim in relevant part as a "judicial . . .
proceeding, . . . which is commenced by service of a complaint or
similar pleading . . . ."  Mem. Supp. Mot. Summ. J., Ex. A-D,
Definitions § II.C (internal punctuation omitted).  The Consent
Forms here do not commence a new judicial proceeding and are not
a complaint or similar pleading.  Indeed, absent the judicial

proceeding commenced with the Ahad suit, the Consent Forms would not exist.  The Consent Forms themselves are not "proceedings," nor did they commence new proceedings, they are all part of the same proceeding.  The plain language of the policies compels the conclusion then that the Consent Forms are part of the same claim.  For that reason alone, the Court concludes that granting summary judgment in Allied's favor is warranted.  However, even if the Consent Forms are separate and distinct claims, the Court would reach the same conclusion because the Consent Forms are causally and logically related to the EEOC Charge and the suit such that the Consent Forms constitute related claims.

In conditionally certifying a class, the Court concluded that Ahad made the requisite showing that she and other similarly situated female employees were subjected to a common policy and plan involving discriminatory compensation practices.  Pl.'s Ex. J, Opinion & Order 20, Lawsuit d/e 53.  Admittedly, the Court's order decertifying the conditionally certified class found that the plaintiffs had not shown that they were subjected to a common policy or practice that resulted in the alleged unequal treatment.  But, as the

parties recognize, the coverage question raised in Allied's motion for summary judgment is a separate and distinct question which is decided under different legal standards from those raised in the class certification and collective action decertification motions in the Ahad lawsuit.  Pl.'s Statement of Position as to Effect of Decertification Order 4, d/e 60 (quoting Mem. of SIU P&S in Opposition to Physician Defs.' Mot. to Stay 4, d/e 49).  Class certification is separate and distinct from the policy language at issue here governing whether claims are related for coverage purposes.  The policy language controls whether the claims are related, not the Rule 23 standard for certifying a class action.  See Royal Indem. Co. v. C.H. Robinson Worldwide, Inc., 2009 WL 2149637, at *5-6 (Minn. Ct. App. July 21, 2009) (rejecting argument that claims could not be related because they failed to satisfy Rule 23's commonality standard, and instead looking to the policy's definition, which was broader than the Rule 23 standard).

Here, in order to determine whether Allied has a duty to defend, the court looks at the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy.  Outboard Marine Corp. v. Liberty Mut. Ins.

<u>Co.</u>, 607 N.E.2d 1204, 1212 (Ill. 1992).  And here, the allegations of the underlying complaint are that there existed a common policy or practice that resulted in the alleged disparate treatment.  But for the suit and the conditional certification order, the Consent Forms would not exist.  This alone is sufficient to conclude that the Consent Forms are claims that arise out of the same facts and are logically or causally connected.  The Consent Forms are related because they arise from the same alleged discriminatory practices.  Although the Court's decertification order found that the plaintiffs had not presented sufficient factual evidence of a common policy or practice, the related claims provision at issue in the policies here encompasses both actual facts or allegations of fact.  Those allegations are enough to determine that the Consent Forms are related claims.

## V. CONCLUSION

For the reasons stated, Plaintiff Allied World Specialty Insurance Company's Motion to Strike, d/e 51, and Motion for Summary Judgment, d/e 39, are GRANTED.  The Clerk is DIRECTED to enter judgment in favor of Allied and against SIU

P&S.  Any pending deadlines are TERMINATED.  Any scheduled

settings are VACATED.  This case is CLOSED.

ENTER:  March 30, 2021

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE